UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

M.K.N.S. SHIPPING S.A.,

                     Petitioner,

        -against-

RAVAGO LM PTE. LTD.,

                     Respondent.

18 Civ. 1562 (AT) (BCM)

**ORDER**

ANALISA TORRES, District Judge:

    Petitioner, M.K.N.S. Shipping S.A. ("MKNS"), seeks a permanent stay of the arbitration proceeding that Respondent, Ravago LM PTE. Ltd. ("Ravago"), has commenced in New York. Pet., ECF No. 1. For the reasons stated below, the petition is GRANTED.

## BACKGROUND

    On March 7, 2014, Petitioner, as registered owner of the vessel M/T POLARIS STARDOM (the "Vessel"), entered into a written time charter party[1] agreement with nonparty Hanjin Shipping Co Ltd. ("Hanjin Shipping") in which Hanjin Shipping agreed to charter the Vessel from Petitioner. Pet. ¶ 6. Hanjin Shipping then sub-chartered the Vessel to nonparty Hanjin Oversea Tankers Pte. Ltd. ("Hanjin Overseas"). *Id.* ¶ 7. On April 5, 2016, Hanjin Overseas sub-chartered the Vessel to Respondent (the "Hanjin Overseas-Ravago Sub-charter") to transport phenol from China to India. *Id.* ¶ 8; Resp. Ans. ¶ 5, ECF No. 9. The Hanjin Overseas-Ravage Sub-charter contains an arbitration clause stating that "[a]ny and all differences and disputes of whatsoever nature arising out of this charter shall be put to arbitration in the City of New York." Resp. Ans. ¶ 5. Petitioner was not a signatory to the Hanjin Overseas-Ravago Sub-charter. Pet. ¶ 10.

---

[1] "A 'charter party' is a contract by which a ship or part thereof is leased to a merchant. The term also refers to the instrument that establishes the terms and conditions of the charter." *Cont'l Ins. Co. v. Polish S.S. Co.*, 346 F.3d 281, 282 n.2 (2d Cir. 2003).

In April 2016, the phenol was loaded onboard the Vessel in China and eight bills of lading were issued. Gutowski Aff. Ex. G, ECF No. 16-7. It is undisputed that these eight bills of lading constitute the contracts of carriage between Petitioner and Respondent. The spaces contained in the bills of lading which provide for identification of the governing charter party were left blank. *Id.*[2]

When the vessel arrived at the discharge port of Kandia, India on May 14, 2016, the receivers rejected delivery of the cargo on the ground that it was off-specification with respect to its color. Molina Aff. Ex. A at 1, ECF No. 21-1; Resp. Ans. Ex. C, ECF No. 9-3. On May 25, 2016, Petitioner, Respondent, and the receivers executed a "Discharge Agreement" pursuant to which the receivers agreed to accept delivery of the cargo. Resp. Ans. Ex. C. Clause 6 of the Discharge Agreement stated that any claim arising out of the bills of lading would be subject to arbitration in London. *Id.* at 3.

On April 25, 2017, Respondent demanded that Petitioner arbitrate its cargo claim in New York on the basis of the Hanjin Overseas-Ravago Sub-charter and the bills of lading. Gutowski Aff. Ex. F, ECF No. 16-6. On February 21, 2018, Petitioner filed a petition seeking to stay the arbitration commenced in New York. Pet.

## DISCUSSION

Respondent argues that strong federal policy requires arbitration. However, "[w]hile federal arbitration policy may help to define the scope of what the parties are agreeing to when they agree to arbitrate a contractual dispute, it cannot create a contract between non-contracting parties." *Monisoff v. Am. Eagle Invs., Inc.*, 927 F. Supp. 137, 138 (S.D.N.Y. June 10, 1996).

---

[2] Each bill of lading states: "This shipment is carried under and pursuant to the terms of the Charter dated _____ at_____ between_____ and_____ as Charterer, and all the terms (including Arbitration Clause) whatsoever of said Charter except the rate and payment of freight specified therein apply to and govern the rights of the parties concerned in this shipment." Gutowski Aff. Ex. G.

Therefore, "[t]he first step is to ascertain whether the parties entered into an agreement to arbitrate." *Id.* at 137–38.

The only written contracts between Respondent and Petitioner are the bills of lading and the Discharge Agreement, none of which provide for arbitration in New York. Respondent, however, argues that arbitration in New York is appropriate because the Hanjin Overseas-Ravago Sub-charter (and its arbitration provision) was incorporated by reference into the bills of lading. Resp. Opp. at 6–8, ECF No. 20. The issue before the Court is whether the bills of lading effectively incorporated the arbitration clause in the Hanjin Overseas-Ravago Sub-charter.

"It has long been clear that where the terms of the charter party are expressly incorporated into the bills of lading they are a part of the contract of carriage and are binding upon those making claim for damages for the breach of that contract just as they would be if the dispute were between the parties to the charter agreement." *Cont'l Ins. Co. v. Polish S.S. Co.*, 346 F.3d 281, 283 (2d Cir. 2003) (internal quotation marks, citation, ellipsis, and alterations omitted). "Generally, to incorporate a charter party effectively, the bill of lading must 'specifically refer to a charter party' and use 'unmistakable language' that it is incorporated." *Id.* (internal quotation marks, citation, and alteration omitted).

The provision in question in the bills of lading provides that "[t]his shipment is to be carried under and pursuant to the terms of the Charter dated _____ at _____ between _____ and _____ as Charterer, and all the terms (including Arbitration Clause) whatsoever of the said Charter except the rate and payment of freight specified therein apply to and govern the rights of the parties concerned in this shipment." Gutowski Aff. Ex. G. Respondent is not identified as the charterer. Nor is the Hanjin Overseas-Ravago Sub-charter referenced as the charter party.

3

Respondent argues that the Hanjin Overseas-Ravago Sub-charter is the only charter party, and, therefore, the provision above unambiguously refers to it. Resp. Opp. at 6. The Court disagrees.

"Where the incorporation clause provides space for listing the name and date of the charter party and the space is left blank, courts usually have found against incorporation." *Dun Shipping Ltd. v. Amerada Hess Shipping Corp.*, No. 01 Civ. 2088, 2005 WL 7870783, at *16 (S.D.N.Y. Oct. 5, 2005) report and recommendation adopted, 2006 WL 2291024 (S.D.N.Y. Aug. 3, 2006). Moreover, as previously discussed, with respect to the cargo at issue, there were at least three charter parties, with several parties acting in different capacities, namely: (1) the March 7, 2014 time charter party between Petitioner and Hanjin Shipping, (2) a sub-charter between Hanjin Shipping and Hanjin Overseas, and (3) a sub-charter between Hanjin Overseas and Respondent (i.e. the Hanjin-Overseas Ravage Sub-charter).[3]

Accordingly, because there were at least three charter parties involved, the failure to specifically identify the Hanjin Overseas-Ravago Sub-charter in the bills of lading bars incorporation. *See MISR Ins. Co. v. M/V HAR SINAI*, 480 F. Supp. 398, 404–05 (S.D.N.Y. 1979) (rejecting incorporation because there were two "Gencon charters" and, therefore, a reference to a "Gencon" charter party within the bill of lading "was ambiguous and therefore failed to effectively incorporate the terms of any charter party within the bill of lading").

The Court also rejects Respondent's argument that there was an alter ego relationship between Petitioner and Hanjin Overseas such that Petitioner should be considered connected to

---

[3] "[I]t is common for a vessel to be subject to several charters during any one voyage, with each charterer in contractual privity with the next party up and down the chain and the relationships between these charterers governed by the terms of the charters entered between them." *In re Complaint of Kreta Shipping Inc., S.A.*, 1 F. Supp. 2d 282, 288 n.1 (S.D.N.Y. 1998).

that sub-charter to which it otherwise has no connection.[4] Respondent alleges that a website lists both Petitioner and Hanjin Overseas as owners and operators of the Vessel and as having the same office address in Singapore. Resp. Opp. at 4. The declaration of Mr. Tomofumi Naruse, Petitioner's President, establishes that this is not true. *See* Naruse Decl., ECF No. 22. Petitioner and Hanjin Overseas are separate and independent companies. *Id.* ¶¶ 4–8.

## CONCLUSION

For the foregoing reasons, Petitioner's motion for injunctive relief and declaratory judgment is GRANTED. The underlying arbitration in New York is permanently ENJOINED because there is no valid agreement between Petitioner and Respondent to arbitrate in New York.

The Clerk of Court is directed to terminate the motions at ECF Nos. 13 and 18 and to close the case.

SO ORDERED.

Dated: May 15, 2019
      New York, New York

*[signature]*
_____
ANALISA TORRES
United States District Judge

---

[4] To the extent that Respondent seeks discovery on this issue, Resp. Opp. at 4, the Court denies that request as well. because Mr. Naruse's declaration establishes that the request is nothing more than a "fishing expedition." *Abu-Nassar v. Elders Futures Inc.*, No. 88 Civ. 7906, 1991 WL 45062, *16 (S.D.N.Y. Mar. 28, 1991).